**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

**JUDSON TODD EVANS,**

      **Plaintiff,**

v.

**CHRIS BRYANT, et al.,**

      **Defendants.**

**Case No. 23-CV-368-JFH-GLJ**

<u>**OPINION AND ORDER**</u>

Now before the Court are the Motions to Dismiss Plaintiff's Amended Complaint submitted by Defendants Kolby Corbell [Dkt. No. 38], Paul Johnson [Dkt. No. 39], Turn Key Health Clinics, LLC ("Turn Key") [Dkt. No. 46], Josephine Otoo [Dkt. No. 47], and Brian Cooper [Dkt. No. 57]; the Partial Motion to Dismiss submitted by Defendants Devra Atwood, Chris Bryant, and Clay Lintner [Dkt. No. 40]; the Motions for Summary Judgment submitted by Plaintiff Judson Todd Evans ("Plaintiff") [Dkt. Nos. 84, 85, 86, 87], and Plaintiff's Motion for Immediate Injunctive Relief [Dkt. No. 80]. For the reasons discussed here, the Court finds Plaintiff's claims should be dismissed without prejudice, apart from Plaintiff's due process claim raised against Defendant Corbell in his individual capacity and Plaintiff's free exercise claim raised against Defendants Bryant and Atwood in their individual and official capacities. The Court denies Plaintiff's motions for summary judgment and motion for preliminary injunctive relief.

**BACKGROUND**

Plaintiff, appearing pro se and proceeding *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Dkt. No. 10. Plaintiff's claims arise from events he alleged transpired between March and December 2023, while he was housed as a pretrial detainee at the Carter County Detention Center ("CCDC") in Ardmore, Oklahoma.

*Id.* at 2.  Plaintiff seeks relief against ten defendants: Chris Bryant, Sheriff of Carter County; Devra Atwood, Jail Administrator; Clay Lintner, Jail Administrator; Turn Key; Josephine Otoo, Turn Key Nurse; Nurse Kelly D. LPN; Brian Cooper, Benchmark Kitchen Supervisor; Nurse E.B. LPN; Kolby Corbell, jail staff; and Paul Johnson, jail staff (collectively, "Defendants").  *Id.* at 3-5. Plaintiff sues Defendants in their individual and official capacities.  He seeks compensatory and punitive damages, as well as injunctive relief.  *Id.* at 8.

## I.    Defendants' Motions to Dismiss

To survive a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *See Twombly*, 550 U.S. at 555-56.  While the Court construes a pro se litigant's pleadings liberally, this liberal construction, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1174-75 (10th Cir. 1997).

### a.    Claim 1: Deliberate Indifference to Serious Medical Needs

In his first claim for relief, Plaintiff alleges he received inadequate medical care at CCDC in relation to the treatment of his arthritis and dementia.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  The same constitutional protection applies to

pretrial detainees, such as Plaintiff, through the Fourteenth Amendment. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023). The test for liability involves both an objective and a subjective component. *Id.* The objective component is met if "the deprivation at issue was . . . 'sufficiently serious.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted). Here, Plaintiff alleges that physicians diagnosed and prescribed treatment for both his arthritis and early onset dementia. Dkt. No. 10 at 10. Accordingly, the Court finds Plaintiff has plausibly alleged the objective component of his claim.

The subjective component of a deliberate-indifference claim "is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference.'" *Mata*, 427 F.3d at 751 (alteration omitted) (quoting *Farmer*, 511 U.S. at 837). The Tenth Circuit has equated the deliberate-indifference standard to "'recklessness,' in which 'a person disregards a risk of harm of which he is aware.'" *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1154 (10th Cir. 2022) (quoting *Verdecia v. Adam*, 327 F.3d 1171, 1175 (10th Cir. 2003)). However, the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). The deliberate-indifference standard can be met both in the context of a medical professional "fail[ing] to properly treat a serious medical condition" and under the "gatekeeper theory." *Lucas*, 58 F.4th at 1137. Under the latter theory, a prison official may be liable if he "prevents an inmate from receiving treatment or den[ies] him

3

access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Generally, a medical professional will not be liable under this theory unless "the medical professional knows that his [or her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, [but] . . . delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Id.*

Plaintiff alleges he experienced deliberate indifference to his serious medical needs on more than one occasion. He first alleges:

> I've been denied my medications for rheumatoid arthritis, psoriatic arthritis, and early onset dementia from bookin until [August 17, 2023]. I asked to see a doctor and was repeatedly denied. I've still never seen a doctor. I've grieved these issues and received negative responses from Devra Atwood, Chris Bryant, Nurse Kelly D. KDLPN, Clay Lintner, Josephine LNU, and Nurse E.B. EBLPN.

Dkt. No. 10 at 6. These allegations, however, fail to plausibly demonstrate the personal participation of any defendant. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [the] plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Accordingly, to the extent Plaintiff predicates his claim on "negative responses" to administrative grievances, Plaintiff fails to demonstrate any defendant's personal participation. Dkt. No. 10 at 6. Further, in the context of § 1983 cases, it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphases in original). Plaintiff's

lack of specificity and differentiation as to the conduct of each defendant renders his allegations insufficient to state plausible claims for relief.

Plaintiff then alleges that on March 15, 2023, after being placed into a "drunk tank," he "explained to jail staff and the contract Turn Key nurses that [he] was on several medications for severe rheumatoid arthritis, psoriatic arthritis and early onset dementia, all of which ha[d] been diagnosed by [his] personal physician and the doctor from the Social Security Disability people." Dkt. No. 10, at 10.  Plaintiff further alleges that, on or around March 20, 2023, he was "placed into general population," and, because he "didn't know how to use the kiosk system yet," he "just explained to the nurses that [he] had been taking" oxycodone, hydrocodone, morphine, and prescriptions for his dementia.  *Id.*  Plaintiff alleges the nurses told him "they didn't give out medications for pain nor did they have a doctor for dementia." *Id.* at 10-11 ("I have been told by Turn Key nurses that 'We don't have doctors,' 'We don't do those medications' all the way to 'It sucks to suck' by Nurse Amanda.").  Plaintiff additionally alleges, "The person with the highest level of qualification I have seen from Turn Key is Nurse Practitioner Josephine who said to Nurse Amanda that she didn't bel[ie]ve I had dementia." *Id.* at 11.

Here, too, Plaintiff provides primarily collective allegations against "jail staff" and the "Turn Key nurses," rather than isolating the allegedly unconstitutional acts of each defendant. Such collective allegations do not permit the Court to draw a reasonable inference of an individual defendant's personal participation or deliberate indifference.  *See Robbins*, 519 F.3d at 1248-50. Of the two nurses referenced by name, only Defendant Josephine is a named defendant in this action.  In her Motion to Dismiss, Defendant Josephine asserts that Plaintiff "failed to plead facts sufficient to establish the subjective component of the deliberate indifference test."  Dkt. No. 47 at 7.  The Court agrees in that the sparsity of allegations specific to Defendant Josephine prevents

the Court from inferring deliberate indifference. Even if Defendant Josephine was responsible for Plaintiff's treatment, her alleged statement to Nurse Amanda that she "didn't bel[ie]ve [Plaintiff] had dementia" suggests, at most, a misdiagnosis, which is insufficient to establish deliberate indifference. *Id.* at 11; *see Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006) ("[A] misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim."); *Strain v. Regalado*, 977 F.3d 984, 996 (10th Cir. 2020). The allegations fail to plausibly show that Defendant Josephine was "aware of facts from which the inference could be drawn" that Plaintiff's arthritis or dementia posed a "substantial risk of serious harm,"[1] and her alleged disbelief that Plaintiff had dementia suggests that she did not "draw [that] inference." *Farmer*, 511 U.S. at 837. Accordingly, the Court similarly concludes that Plaintiff failed to state a claim against Defendant Josephine.

For these reasons, the Court finds the allegations contained in Claim 1 do not state plausible claims for relief against any named defendant in his or her individual capacity.[2]

b. Claim 2: Due Process Violation and Retaliation

Plaintiff next alleges that on September 23, 2023, Defendant Corbell "entered [his] cell,

---

[1] Plaintiff claims that he "experienc[ed] severe pain [and] horrible withdrawal symptoms from having no medications," but he does not allege these symptoms were witnessed by Defendant Josephine or any other defendant. Dkt. No. 10, at 11.

[2] Neither Nurse Kelly D. nor Nurse E.B. has moved for dismissal, though they have jointly moved for leave to file a motion to dismiss out of time. *See* Dkt. No. 90. Because Plaintiff is proceeding *in forma pauperis*, however, the Court finds any claims raised against Nurse Kelly D. and Nurse E.B. may appropriately be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted. *See* Dkt. No. 7 (granting Plaintiff's motion for leave to proceed *in forma pauperis*); *see also* 42 U.S.C. § 1997e(c)(1). Defendant Turn Key argued in its Motion to Dismiss that Plaintiff had "not sufficiently plead [sic] facts that would show that any member or the Turn Key medical staff was deliberately indifferent to his medical condition," Dkt. No. 46 at 4-9, and Plaintiff therefore had notice of this argument and an opportunity to amend his pleading accordingly.

pulled out his penis and wagged it at [Plaintiff], while saying [']I have to piss.'" Dkt. No. 10 at 6,

13. Plaintiff then alleges that "a stream of urine began flowing from it." *Id.* at 13. Plaintiff

contends he gave a written statement of the event to Officer Hunter Smith "at the same time that

[Defendant] Corbell was using his position to condemn cell 219 to 72's," meaning he and other

inmates "were only allowed out 1 hour every 3 days." *Id.* at 14. Plaintiff asserts he "tried to get

the [Prison Rape Elimination Act ("PREA")] number from [Defendant] Paul Johnson" but

Defendant Johnson stated he "didn't want to get involved" and "refused to give it to [him]." *Id.* at

6, 14. He further contends that he grieved the incident to Defendant Atwood, who "answered [his]

grievance 'No Further Action.'" *Id.* at 6, 14. Plaintiff asserts these actions violated his due process

rights under the Fourteenth Amendment. *Id.* at 6.

### i. *Plaintiff's Allegations against Defendant Corbell*

Defendant Corbell argues that Plaintiff has failed to state a plausible claim for relief against

him and that he is entitled to qualified immunity. Dkt. No. 38. Claims regarding mistreatment in

pretrial detention are evaluated under the Due Process Clause of the Fourteenth Amendment,

which prohibits conditions and restrictions that "amount to punishment." *Bell v. Wolfish*, 441 U.S.

520, 535 (1979); *see Colbruno v. Kessler*, 928 F.3d 1155, 1162-63 (10th Cir. 2019).[3] "[I]f a

particular condition or restriction of pretrial detention is reasonably related to a legitimate

---

[3] Defendant Corbell argues that, though Plaintiff's claim arises under the Fourteenth Amendment,
the Eighth Amended standard should apply, requiring Plaintiff to plausibly allege Defendant
Corbell acted with a "malicious state of mind." Dkt. No. 38 at 6. However, the Tenth Circuit
clarified in *Colbruno* that "a pretrial detainee can establish a due-process violation by 'providing
only objective evidence that the challenged governmental action is not rationally related to a
legitimate governmental objective or that it is excessive in relation to that purpose.'" *Colbruno*,
928 F.3d at 1163 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)); *see Kingsley*, 576
U.S. at 400 ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less
'maliciously and sadistically.'"); *cf. Strain*, 977 F.3d at 991 (declining to extend *Kingsley* to
Fourteenth Amendment claims of deliberate indifference to serious medical needs brought by
pretrial detainees).

governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. If, however, "a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* Thus, absent a showing of an expressed intent to punish, the Court considers "whether an alternative purpose to which the restriction [or condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Id.* at 538.

The Court is mindful that "the full scope of protection provided by the Due Process Clauses to pretrial detainees [is] to some extent uncertain," and "some . . . conditions may be too insignificant to be the predicate for a Fourteenth Amendment violation." *Colbruno*, 928 F.3d at 1162, 1165. The Court is also mindful that, while conduct involving physical force or the exposure of the *detainee's* body has been found, under certain circumstances, to violate Fourteenth Amendment protections, Plaintiff's allegations do not fall within these categories. *See, e.g.*, *Kingsley*, 576 U.S. at 397; *Colbruno*, 928 F.3d at 1163-64. However, the pertinent initial inquiry is whether the alleged condition—a prison employee "shaking" and "wagg[ing]" his exposed penis at a pretrial detainee in a "taunt[ing]" manner and urinating in front of him—is reasonably related to a legitimate governmental objective. Dkt. No. 10 at 6, 13. Defendant Corbell offers no argument on this point, and the Court finds the allegations sufficient to permit a reasonable inference that the alleged misconduct amounts to impermissible punishment in violation of the Fourteenth Amendment. *See Griffith v. El Paso Cnty.*, 129 F.4th 790, 830 & n.29 (10th Cir. 2025) (quoting unpublished case for its "commonsense pronouncement that sexual harassment serves no legitimate penological purpose").

8

As noted, Defendant Corbell argues that he is entitled to qualified immunity.  Dkt. No. 38 at 9-10.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant raises the defense of qualified immunity, "the plaintiff carries a two-part burden to show:  (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).

"[T]o trigger the plaintiff's two-part burden," however, the qualified-immunity defense must be "adequately present[ed]."  *Berryman v. Niceta*, 143 F.4th 1134, 1140 (10th Cir. 2025).  In *Berryman*, the Tenth Circuit Court of Appeals recently explained:

> [T]o adequately present the defense, the defendant must not only explicitly raise it, *see Montoya v. Vigil*, 898 F.3d 1056, 1063–64 (10th Cir. 2018), but must also plead the defense beyond a "perfunctory assertion," *Tillmon* [*v. Douglas Cnty.*], 817 F. App'x [586,] 590 [(10th Cir. 2020)].  Accordingly, where a defendant makes only a bare assertion of qualified immunity, the plaintiff bears no burden to satisfy the ordinary two-prong test.  *See id.*; *A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) (unpublished) (holding that a defendant's "qualified-immunity argument was underdeveloped" where it "contain[ed] mostly general legal statements and empty platitudes").
>
> Finally, in raising a qualified-immunity defense, a defendant may not merely rely on substantive legal arguments based on the Rule 12(b)(6) failure-to-state-a-claim standard.  *Tillmon*, 817 F. App'x at 590; *Montoya*, 898 F.3d at 1064–65 (holding that a "failure-to-state-a-claim argument, without more, is insufficient to raise qualified immunity" because "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 527–28, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985))).

*Id.* at 1140-41.  The Tenth Circuit found that "merely recit[ing] the qualified immunity legal standard" and stating "in a single sentence, without citation to any legal authority" that "no clearly

established law demonstrates [the alleged] facts give rise to personal liability" was insufficient to adequately raise the defense.  *Id.* at 1141 (internal quotation marks omitted).  The Court further explained that "[a] defendant cannot simply point to 12(b)(6) arguments, without more, in support of a qualified-immunity defense."  *Id.*

Here, Defendant Cobell recites the legal standard for the qualified immunity defense but provide no argument beyond pointing to his previous arguments for dismissal under Rule 12(b)(6).  *See* Dkt. No. 38 at 10 ("[A]s discussed above, Plaintiff has failed to state a plausible § 1983 claim against Defendant Corbell in his individual capacity.  Plaintiff has failed to show that Defendant Corbell's actions rise to the level of a constitutional violation on any cause of action.  Accordingly, Defendant Corbell is entitled to qualified immunity with regard to Plaintiff's claims and they should be dismissed.").  Under *Berryman*, this "perfunctory assertion of qualified immunity . . . is insufficient" to adequately raise the defense.  *Berryman*, 143 F.4th at 1142; *see Tillmon*, 817 F. App'x at 589 (finding defendant had not preserved qualified-immunity defense for appellate review where motion to dismiss included only Rule 12(b)(6) arguments and "a single paragraph briefly discussing the law of qualified immunity").

Finally, the Court finds that Plaintiff's allegation that Defendant Corbell imposed restrictions "at the same time" that Plaintiff provided a written statement of the event is insufficient to support a plausible inference that Defendant Corbell retaliated against him for exercising a constitutional right.  Dkt. No. 10 at 14.  To succeed on a  retaliation claim, a plaintiff must show: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Shero v.*

*City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "[T]emporal proximity between the protected [activity] and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive." *Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014).

Here, Plaintiff offers only temporal proximity in support of the third element. He does not specifically allege that Defendant Corbell was aware of Plaintiff's submission of a written statement or aware of its contents at the time Defendant Corbell imposed restrictions. *Cf. Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (finding retaliatory motive had been sufficiently pled where the plaintiff alleged not only close temporal proximity between the filing of a grievance and the plaintiff's transfer to an out-of-state supermax prison, but also that "Defendants were aware of his [grievance], [and] that his [grievance] complained of Defendants' actions"). Further, Plaintiff states that the restrictions imposed were those prescribed under CCDC policy "to punish inmates for rule violations." Dkt. No. 10 at 14. Plaintiff does not, however, allege that a rule violation justifying the restrictions did not occur, which might have suggested an alternative motive. Accordingly, Plaintiff's individual-capacity claim against Defendant Corbell for retaliation shall be dismissed.

### ii. *Plaintiff's Allegations against Defendants Johnson and Atwood*

To the extent Plaintiff's Claim 2 could be liberally construed as also seeking relief against Defendants Johnson and Atwood, Plaintiff has failed to state plausible claims for relief against them. The Prison Rape Elimination Act does not "provide[] an inmate with a private right of action, enforceable under § 1983, to challenge [the] process" afforded him under the PREA," *Johnson v. Garrison*, 859 F. App'x 863, 863-64 (10th Cir. 2021), and prisoners have "no independent due process rights that arise out of [prison] employees' disposition of internal grievances," *Brewer v. Gilroy*, 625 F. App'x 827, 838 (10th Cir. 2015). Accordingly, Plaintiff has

not plausibly alleged a due process violation against Defendant Johnson or Atwood. Further, Defendant Atwood's alleged response to Plaintiff's administrative grievance is insufficient to demonstrate her personal participation under § 1983 in the due process or retaliation claims alleged against Defendant Corbell. *See Gallagher*, 587 F.3d at 1069 (explaining that a defendant's denial of an administrative grievance does not create an "affirmative link" between the defendant and the alleged constitutional violation). Plaintiff, therefore, has not stated plausible individual-capacity claims against Defendant Johnson or Atwood in relation to Claim 2.

    c.  Claim 3: Free Exercise of Religion

In his third claim for relief, Plaintiff alleges:

> They have not allowed me any Holy Books since I was booked in. This is the policy of Sheriff Chris Bryant and Devra Atwood. The only church service allowed here is Methodist and only material by that church [is] allowed. All other religious material is considered contraband.

Dkt. No. 10 at 7. Defendants Atwood and Bryant do not seek dismissal of this claim in their Partial Motion to Dismiss. *See* Dkt. No. 40.

Defendant Atwood does argue broadly that she lacks an official capacity because she does not have final policymaking authority. *Id.* at 3-4. Yet, whether a defendant "possesses final policymaking authority is not relevant to whether she may be sued in her official capacity." *Yelton v. Bd. of Cnty. Comm'rs*, No. CIV-21-1001-G, 2024 WL 4415256, at *4 (W.D. Okla. Mar. 18, 2024) (R. & R.). An official capacity suit represents merely another way of pleading an action against the entity of which the officer is an agent, and liability against the entity may attach "even though the action is taken by an individual other than the final policymaker." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009); *see Langford v. Grady Cnty. Det. Ctr.*, 670 F. Supp. 2d 1213, 1236-37 (W.D. Okla. 2009) (rejecting argument that official capacity claims should be dismissed because defendants had no policymaking authority).

Accordingly, and for the reasons discussed *infra*, Petitioner's Claim 3 shall be permitted to proceed against Defendants Bryant and Atwood in their individual and official capacities.

d.  Claim 4: Inadequate Food Quality and Portions

Plaintiff next seeks relief in relation to the quality and portions of the food he receives at CCDC.  Plaintiff contends: "Roughly 95% of every meal served since I've been in jail has been served cold.  There's no fruit or milk.  Portions are undersized."  Dkt. No. 10 at 7.  He further alleges that the food is "undercooked and stale," that the "salad on the trays is often rotten," and that the "trays are always dirty," as the "water coming from the boilers was only 120°f which is too cold to sterilize trays."  *Id.* at 17.  He also contends the "food trays do not follow the approved menu from the Department of Health."  *Id.* at 18.

Even if the Court were to assume these allegations are sufficient to demonstrate a constitutional violation, Plaintiff's allegations in Claim 4 fail to demonstrate the personal participation of any defendant in the alleged deprivations.  *See Robbins*, 519 F.3d at 1248; *Foote*, 118 F.3d at 1423.  The only action attributable to a defendant is the alleged denial of grievances by Defendants Cooper and Atwood.  Plaintiff contends he "grieved [the] issues multiple times and Devra Atwood substantiated [his] claims but did nothing to fix the problem."  *Id.* at 7, 18.  He also alleges he "sent tickets to Brian Cooper."  *Id.* at 7.  Denials of grievances, however, do not amount to personal participation in the alleged violation.  *Gallagher*, 587 F.3d at 1069.  Accordingly, the allegations in Claim 4 fail to state a plausible claim for relief against any defendant in his or her individual capacity.

e.  Claim 5: Defendant Bryant's Supervisory Liability

In his final claim for relief, Plaintiff seeks to implicate Defendant Bryant in the previous four claims for relief under a theory of supervisory liability:

> Sheriff Chris Bryant has created an environment of cruel and unusual punishment by creating polices both written and unwritten that allow independent contractors to provide inadequate services that include medical and food and allow personnel who are under his supervision to act with deliberate indifference toward the needs of myself and others. He has failed to train his staff and there is no policy manual for them to follow. The Sheriff's actions have caused me physical pain and permanent damage to my mental faculties.

Dkt. No. 10 at 19. Plaintiff contends that the "food service and medical service department[s] are independent contractors operating under [Defendant Bryant's] authority as the sheriff," and that Defendant Bryant "allow[ed] the medical services contractor to refuse medication and doctors services" and "allow[ed] the food service contractor to operate unchecked." *Id.* at 20. Plaintiff further alleges Defendant Bryant allowed the incident with Defendant Corbell to "remain unresolved" and has "refus[ed] to allow bibles and other religious materials into the jail." *Id.* at 21. Plaintiff asserts that when he asked Defendant Bryant why he allowed these issues to occur, making Plaintiff's "stay [at CCDC] harder than it ha[d] to be," Defendant Bryant responded, "'That's how I get yall to take these shitty deals from the DA.'" *Id.* at 22.

To establish supervisory liability, a plaintiff must demonstrate "an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (internal quotation marks omitted). The "affirmative link" requirement includes three elements: the supervisor's: "(1) personal involvement; (2) causation; and (3) state of mind." *Id.* Regarding the first element, a supervisor's personal involvement may be established by demonstrating his "personal participation, his exercise of control or direction, or his failure to supervise." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal quotation marks

14

omitted).  Personal involvement also may be established through the supervisor's "promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights" or the supervisor's "knowledge of the [constitutional] violation and acquiescence in its continuance." *Id.* (brackets and internal quotation marks omitted).  To establish the second element, a plaintiff must show that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (internal quotation marks omitted).  Finally, to establish the third element, the plaintiff must demonstrate the supervisor acted with "the same state of mind required for the constitutional deprivation he alleges." *Dodds*, 614 F.3d at 1204.

As Defendant Bryant did not seek dismissal of Plaintiff's free exercise claim (Claim 3), the Court does not consider whether Plaintiff has plausibly alleged a free exercise claim against Defendant Bryant based upon supervisory liability.  The Court finds, however, that insofar as Plaintiff's supervisory liability claims against Defendant Bryant are premised on Claims 1, 2, and 4, the claims fail.  The Court has found that Plaintiff failed to plausibly allege an underlying constitutional violation in Claims 1 and 4 against any named defendant, and "[s]upervisors cannot be liable under § 1983 where there is no underlying violation of a constitutional right by a supervisee." *Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019).  Further, Plaintiff's allegations that Defendant Bryant failed to train staff and created policies resulting in deficient medical and food services are conclusory, as Plaintiff provides no facts describing the policies or otherwise supporting his assertions.  As for Claim 2, Plaintiff's allegation that Defendant Bryant left the incident with Defendant Corbell "unresolved" provides no context plausibly demonstrating Defendant Bryant's personal involvement in the underlying incident or a causal connection

between Defendant Bryant's actions and Defendant Corbell's alleged conduct.

    f.   Claims Against Turn Key and the Defendants in their Official Capacities

Plaintiff names Turn Key as a defendant in this action and seeks relief against Defendants in both their individual and official capacities. Dkt. No. 10 at 3-5. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thus, a section 1983 suit "against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (internal quotation marks omitted). Further, a private entity acting under color of state law may be liable for "constitutional violations pursuant to the body's policies," under a theory of municipal liability. *Lucas*, 58 F.4th at 1144; *see Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 & n.13 (10th Cir. 2003) (applying municipal liability framework to § 1983 claims brought against a private entity acting under color of state law).

To establish municipal liability under § 1983, a plaintiff must show: "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). A municipal policy of custom may take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (internal quotation marks

omitted).

> ### i. *Turn Key*

Though Plaintiff named Turn Key as a defendant in this action, Plaintiff does not allege that any Defendant acted in accordance with a policy or custom attributable to Turn Key. Rather, Plaintiff alleges the Turn Key nurses acted in accordance with a policy or custom for which Defendant Bryant was responsible. In the absence of allegations of a Turn Key policy or custom relating to Plaintiff's injuries, the Court finds Plaintiff has failed to state a plausible claim for relief against Turn Key or against the Turn Key nurse defendants in their official capacities.

> ### ii. *The County*

As noted, Plaintiff's allegations pointing to deficient training and supervision on the part of Defendant Bryant are conclusory, and Plaintiff does not plausibly allege a causal link between any municipal policy or custom and the alleged inadequacies in food or medical care or Defendant Corbell's alleged conduct. *See Schneider*, 717 F.3d at 770 (noting that the causation element of municipal liability "is applied with especial rigor . . . when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring" (internal quotation marks omitted)); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

However, Defendant Bryant has not sought dismissal of the official-capacity claim raised against him in Claim 3. Further, the Court has rejected Defendant Atwood's sole argument for dismissal of the official-capacity claim raised against her in Claim 3. Accordingly, these two official-capacity claims shall proceed.

## II.    Plaintiff's Motions for Summary Judgment

Plaintiff has filed a Motion for Summary Judgment against Defendant Cooper [Dkt. No. 84], a Motion for Summary Judgment against Defendants Bryant, Atwood, Lintner, Corbell, and Johnson [Dkt. No. 85], a Motion for Summary Judgment against Turn Key [Dkt. No. 86], and a Motion for Summary Judgment against Defendants Otto, "NP Kelly Dollar LPN," and "Emily Brauer LPN" [Dkt. No. 87].

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.'" *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). A fact is material if it "'is essential to the proper disposition of the claim.'" *Id.* (quoting *Adler*, 144 F.3d at 670). The assertion that a fact is or cannot be genuinely disputed must be supported by citation "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Here, the Court has found dismissal appropriate as to each claim for relief, apart from Plaintiff's due process claim against Defendant Corbell in his individual capacity and Plaintiff's free exercise claim against Defendants Bryant and Atwood in their individual and official capacities. Accordingly, Plaintiff's requests for summary judgment are denied as to the dismissed claims. Further, Plaintiff's four motions for summary judgment fail to comply with the federal

and local procedural rules for such motions, as they are entirely devoid of citation to evidence. *See*

Fed. R. Civ. P. 56(c)(1) (requiring party to cite to particular parts of materials in the record); LCvR

56.1(d) (requiring party to cite, with particularity, to evidentiary material supporting his position);

*Garrett v. Selby Conner Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (noting that pro se

litigants must "follow the same rules of procedure that govern other litigants" (internal quotation

marks omitted)). Because Plaintiff failed to provide evidentiary support, he has not met his burden

of demonstrating an absence of genuine dispute as to any material fact or that he is entitled to

judgment as a matter of law. For these reasons, Plaintiff's motions for summary judgment are

denied.

### III.     Plaintiff's Motion for Immediate Injunctive Relief

Plaintiff additionally has filed a motion requesting "immediate injunctive relief," which

the Court construes as a motion for a preliminary injunction. Dkt. No. 80. Plaintiff states that

Defendant Corbell "has retaliated against him for filing a lawsuit by having the assistant jail

administrator Carlee Phillips place him in SHU." *Id.* at 1. Plaintiff also claims the jail

administrator, Chance Roberts, has "requested to other jailors to be hateful and rude to [Plaintiff]

and to discriminate against [him] for no reason other than [his] lawsuit." *Id.* Defendants Bryant,

Atwood, Lintner, Corbell, and Johnson have responded in opposition to the motion, arguing that

Plaintiff has failed to demonstrate the necessity of an injunction and that such relief is improper

because "Plaintiff's request is not related to his original claims." Dkt. No. 81, at 3.

 Injunctive relief is an extraordinary remedy that should only be granted when the moving

party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d

1253, 1258 (10th Cir. 2005). "[T]he limited purpose of a preliminary injunction is merely to

preserve the relative positions of the parties until a trial on the merits can be held." *Id.* at 1258.

Because the purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm pending resolution of the lawsuit on the merits, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (10th Cir. 1994) (affirming district court's denial of plaintiff's motion for preliminary injunction where the motion sought an injunction against actions committed in retaliation for plaintiff's lawsuit but the underlying complaint brought only Eighth Amendment claims for inadequate medical treatment).

Plaintiff's motion seeks a preliminary injunction to cease mistreatment he is allegedly incurring as retaliation for filing his lawsuit, not the mistreatment alleged in his lawsuit.  As such, Plaintiff's motion "is based on new assertions of mistreatment that are entirely different from the claim[s] raised and the relief requested in his . . . lawsuit," and "has nothing to do with preserving the [Court's] decision-making power over the merits of [Plaintiff's] lawsuit." *Id.*  Because Plaintiff's request for a preliminary injunction is unrelated to preserving the status quo as to any claim, Plaintiff's motion for preliminary injunction is denied. *See Koehn v. Denham*, No. 17-cv-00234-RM-KMT, 2017 WL 11488620, at *2 (D. Colo. Oct. 23, 2017) (rejecting the plaintiff's request for preliminary injunction that would "enjoin Defendants from retaliating against him for filing [his] lawsuit" and explaining that "injunctive relief is generally not appropriate to address post-complaint conduct").[4]

---

[4]  Alternatively, denial of Plaintiff's motion is appropriate because Plaintiff has not made the requisite showing of irreparable injury.  Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show:  "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (internal quotation marks omitted).  Because a showing of

## IV.     Conclusion

For the foregoing reasons, the Court concludes the only claims remaining for adjudication in this action are:  (1) Plaintiff's due process claim raised against Defendant Corbell in his individual capacity and (2) Plaintiff's free exercise claim raised against Defendants Bryant and Atwood in their individual and official capacities.  All other claims raised in Plaintiff's Amended Complaint are dismissed without prejudice for failure to state a claim upon which relief may be granted.

IT IS THEREFORE ORDERED that:

(1) Defendant Johnson's Motion to Dismiss [Dkt. No. 39], Defendant Turn Key Health Clinics, LLC's Motion to Dismiss [Dkt. No. 46], Defendant Josephine Otoo, APRN's Motion to Dismiss [Dkt. No. 47], and Defendant Cooper's Motion to Dismiss [Dkt. No. 57] are GRANTED;

(2) Defendant Corbell's Motion to Dismiss [Dkt. No. 38] and Defendants Bryant, Atwood, and Lintner's Partial Motion to Dismiss [Dkt. No. 40] are GRANTED in part and DENIED in part;[5]

(3) The claims raised against Defendants Nurse Kelly D. LPN and Nurse E.B. LPN are

---

probable irreparable injury is the "single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted).  To make this showing, the moving party "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016).  Though Plaintiff's motion describes uncomfortable conditions, it does not clearly and unequivocally demonstrate a likelihood of harm not compensable by money damages.

[5]  The Partial Motion to Dismiss is denied only as to Defendant Atwood's request for dismissal of the official-capacity claim raised against her in Claim 3.  *See supra*, section II(c); Dkt. No. 40 at 3-5.

dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii);

(4) Plaintiff's Motion for Immediate Injunctive Relief [Dkt. No. 80]; Plaintiff's Motion for Summary Judgment against Brian Kupper [Dkt. No. 84], Plaintiff's Motion for Summary Judgment against Chris Bryant, Devra Atwood, Clay Lintner, Kolby Corbell, and Paul Johnson [Dkt. No. 85], Plaintiff's Motion for Summary Judgment against Turnkey Health [Dkt. No. 86], and Plaintiff's Motion for Summary Judgment against Josephine Otoo NP, Kelly Dollar LPN, and Emily Brauer LPN [Dkt. No. 87] are DENIED;

(5) Defendants Nurse E.B. and Nurse Kelly D.'s Joint Motion for Leave to File Responsive Pleading Out of Time [Dkt. No. 90] and Defendants Josephine Otto, Kelly D. LPN, Emily Brauer, and Turn Key Health Clinics, LLC's Joint Motion to file a Response to Plaintiff's Motions for Summary Judgment [Dkt. No. 91] are DENIED as moot; and

(6) Defendants Corbell, Bryant, and Atwood shall file their responsive pleadings as to the remaining claims within fourteen (14) days of this Order.

Dated this 30th day of September 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE